UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JASON WIMBERLY,

                            Plaintiff,

            -v.-

EXPERIAN INFORMATION
SOLUTIONS, INC.,

                            Defendant.

---

18 Civ. 6058 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Jason Wimberley, appearing *pro se*, contends that Defendant Experian Information Solutions, Inc. has violated both the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x (the "FCRA"), and the New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law §§ 380-380v (the "NYFCRA"), by: (i) reporting information on Plaintiff's consumer report beyond the statutorily allowed period; (ii) failing to follow reasonable procedures to assure maximum possible accuracy in his report; and (iii) failing to disclose to Plaintiff all of the information in his file. Relatedly, Plaintiff requests that the Court issue a preliminary injunction to enjoin Defendant's alleged continuing violations of the above statutes. Defendant now moves to dismiss Plaintiff's various claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and opposes Plaintiff's motion for a preliminary injunction. For the reasons set forth in the remainder of this Opinion, Defendant's motion to dismiss is granted and Plaintiff's motion for a preliminary injunction is denied.

# BACKGROUND[1]

## A. Factual Background

At the heart of this lawsuit are six student loans Plaintiff took from the U.S. Department of Education. Plaintiff has disputed the inclusion of these loans on his credit report since March 16, 2016. (Am. Compl. ¶¶ 34-48). Specifically, Plaintiff disputes two entries for loans with a listed "Date opened" of August 2002 (*id.* at ¶¶ 34, 37); one entry for a loan with a listed "Date opened" of January 2002 (*id.* at ¶ 40); one entry for a loan with a listed "Date opened" of September 2001 (*id.* at ¶ 43); and two entries for loans with a listed "Date opened" of May 2011 (*id.* at ¶¶ 46, 48).

Plaintiff alleges that each of the entries for these loans violated § 1681c(a)(4) and (5) of the FCRA, as well as § 380-j(f)(1)(iv) of the NYFCRA, because Defendant continued to report the loans on Plaintiff's credit report after the statutorily prescribed five-year and seven-year periods. (Am. Compl.

---

[1] The facts set forth in this Opinion are drawn principally from the Amended Complaint ("Am. Compl." (Dkt. #31)); Plaintiff's opposition brief ("Pl. Opp." (Dkt. #45)); and Plaintiff's exhibits to his opposition brief ("Pl. Opp., Ex. [ ]" (Dkt. #44)). In so doing, the Court notes that, on a motion to dismiss, it may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs' position or of which plaintiffs had knowledge and relied on in bringing suit." *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks and alterations omitted). Additionally, courts are permitted to consider allegations presented by *pro se* litigants for the first time in their opposition papers, as long as such allegations are consistent with the complaint and do not add new claims. *See Rogers* v. *Fashion Inst. of Tech.*, No. 14 Civ. 6420 (AT), 2016 WL 889590, at *1 (S.D.N.Y. Feb. 26, 2016) (collecting cases); *see generally Walker* v. *Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

For ease of reference, Defendant's opening brief is referred to as "Def. Br." (Dkt. #33); Plaintiff's opposition brief as "Pl. Opp." (Dkt. #45); Defendant's reply brief as "Def. Reply" (Dkt. #59); and Plaintiff's sur-reply brief as "Pl. Reply" (Dkt. #61).

¶¶ 14-15). Plaintiff also alleges that Defendant provided inaccurate status information for these loans by reporting them as unpaid. (*Id.* at ¶ 7). In addition to that clear inaccuracy, Plaintiff alleges that Defendant has engaged in a history of misreporting the six loans, primarily by reporting inconsistent "first reported dates," inconsistent payment status information, and incorrect balance amounts, among other things. (*See* Pl. Opp. 16-21). Plaintiff claims that these inaccuracies violated § 1681e(b) of the FCRA and § 380-j(e) of the NYFCRA. (Am. Compl. ¶¶ 55-91).[2]

Separately, Plaintiff alleges that on or about January 2, 2018, he spoke with a customer service representative in Defendant's National Consumer Assistance Center and requested copies of Automated Consumer Disputer Verifications ("ACDVs") and Universal Data Forms ("UDFs") relating to his credit report. (Am. Compl. ¶ 31).[3] Plaintiff was told that Defendant "would not disclose this information to [him] without a subpoena" (*id.*), allegedly in violation of § 1681g of the FCRA and § 380-d of the NYFCRA. (*Id.* at ¶¶ 92-103). Plaintiff alleges that as a result of these various violations, he has been denied credit from multiple creditors, has lost housing opportunities (*id.* at ¶¶ 20, 23, 52), and, most troublingly, was hospitalized on or about July 14,

---

[2] Construing Wimberly's pleadings liberally and reading them to raise the strongest arguments they suggest, *see Triestman* v. *Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006), the Court will also view the Amended Complaint as raising a claim under § 380-k of the NYFCRA, given its citation to that section (*see* Am. Compl. ¶ 83).

[3] These forms are discussed later in the text.

2017, "due in part to his inability to find housing" as a "consequence of Experian's flawed reporting" (*id.* at ¶ 51).

## B. Procedural Background

Plaintiff initiated this action on July 3, 2018. (Dkt. #1). That same day, Plaintiff attempted to file a motion for a temporary restraining order (Dkt. #4), in response to which the Court ordered the parties to appear for a conference on July 31, 2018 (Dkt. #5). At the July 31 conference, the Court reserved decision on Plaintiff's application for injunctive and declaratory relief and asked Defendant to investigate Wimberly's claims. (Dkt. #11 (transcript of proceedings)). On August 10, 2018, Defendant provided to the Court the results of its investigation, reporting that it had identified the six loans at issue and determined that they had all become delinquent in June 2012 and thus would not be purged from Defendant's reports until 2019. (Dkt. #13).

On August 23, 2018, Defendant requested a pre-motion conference to discuss a proposed motion to dismiss (Dkt. #16), which conference was then held on October 11, 2018 (Minute Entry of October 11, 2018). The parties were referred to mediation on October 18, 2018 (Dkt. #22), but the mediation effort was unsuccessful (Dkt. #25).

On December 19, 2018, the Court permitted Plaintiff the opportunity to amend his original Complaint (Dkt. #26), and Plaintiff so amended on February 4, 2019 (Dkt. #31). At a conference on January 17, 2019, the Court also set a briefing schedule for Defendant's motion to dismiss and Plaintiff's motion for a preliminary injunction. (Minute Entry of January 17, 2019).

Defendant filed its opening brief in support of its motion to dismiss on March 1, 2019. (Dkt. #33). Plaintiff filed a combined brief opposing the motion to dismiss and supporting his motion for a preliminary injunction on April 15, 2019 (Dkt. #45), along with a collection of documents relating to his Amended Complaint (Dkt. #44). Defendant filed a reply brief for its motion to dismiss and a brief opposing the motion for a preliminary injunction on May 15, 2019. (Dkt. #59). Plaintiff filed a reply brief for his motion for a preliminary injunction on May 30, 2019. (Dkt. #61).

## DISCUSSION

### A. The Court Grants Defendant's Motion to Dismiss

#### 1. Motions Under Rule 12(b)(6)

The Court will address first Defendant's motion to dismiss Plaintiff's claims pursuant to Rule 12(b)(6). In response to a plaintiff's complaint, a defendant is permitted to move that the plaintiff's action be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re*

*Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).

"[C]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted) (citing *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)); *cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed as to do justice.").[4] "However inartfully pleaded, a *pro se* complaint may not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *Legeno* v. *Corcoran Grp.*, 308 F. App'x 495, 496 (2d Cir. 2009) (summary order) (internal quotations and brackets omitted) (quoting *Posr* v. *Court Officer Shield No. 207*, 180 F.3d 409, 413-14 (2d Cir. 1999)). With that said, though, to survive a Rule 12(b)(6) motion to dismiss, a *pro se* plaintiff's factual allegations must be at least "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Indeed, the court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the

---

[4] The Court includes these legal standards here, as it does in all *pro se* cases. In this case, however, the Court commends Plaintiff for his thorough research and thoughtful arguments, evidenced in both in his pleadings and his briefs.

allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678)). Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## 2. Plaintiff Has Failed to State a Claim Under § 1681c(a)(4) and (5) of the FCRA and § 380-j(f)(1)(iv) of the NYFCRA

To begin, Plaintiff alleges that Defendant has reported negative information about the six loans at issue beyond the statutorily allowed time periods in the FCRA and the NYFCRA. (Am. Compl. ¶¶ 14-15). Section 1681c(a)(4) of the FCRA provides that "no consumer reporting agency may make any consumer report containing any of the following items of information: … Accounts placed for collection or charged to profit and loss[5] which antedate the report by more than seven years." Section 1681c(a)(5) further prohibits "[a]ny other adverse item of information, other than records of convictions of crimes[,] which antedates the report by more than seven years." The statute also provides that the seven-year period:

> shall begin, with respect to any delinquent account that is placed for collection …, charged to profit and loss, or subjected to any similar action, upon the expiration of the 180-day period beginning on the date of the

---

[5] A "charged" debt is one "that has become seriously delinquent, and the lender has given up on being paid." *Defining Charged Off, Written Off, and Transferred*, Experian (July 18, 2016), http://www.experian.com/blogs/ask-experian/defining-charged-off-written-off-and-transferred/.

commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action.

15 U.S.C. § 1681c(c)(1).

Section 380-j(f)(1)(iv) provides that:

> no consumer reporting agency may make any consumer report containing any of the following items of information: ... accounts placed for collection or charged to profit and loss which antedate the report by more than seven years; or accounts placed for collection or charged to profit and loss, *which have been paid* and which antedate the report by more than five years.

N.Y. Gen. Bus. Law § 380-j(f)(1)(iv) (emphasis added). Unlike its federal counterpart, the NYFCRA does not state that the triggering event for the five-year or seven-year period is the delinquency immediately preceding the collection activity or charge to profit and loss. Instead, the time period begins running when the account was placed for collection or charged to profit and loss.

Plaintiff has provided no allegation in his pleadings or in his opposing papers that would suggest when the six loans at issue either entered delinquency or were placed for collection or charged to profit and loss, the respective triggering events for the FCRA and the NYFCRA. Indeed, all Plaintiff has done is provide the months in which the loans were opened (Am. Compl. ¶¶ 34, 37, 40, 43, 46, 48), and dispute Defendant's assertions regarding when the loans were first reported as having entered collection (Pl. Opp. 12-14). Plaintiff, for his part, contends that it is enough that he has pleaded that Defendant "reported all the loans in question in excess of the lawfully allowed

time period of 7 years" (Am. Compl. ¶ 8), or that "Defendant willfully violated the NYFCRA by reporting 6 student loans … despite the fact that the NYFCRA prohibits the defendant from reporting on paid accounts which were placed for collections or charged to profit and loss more than 5 years ago" (*id.* at ¶ 15). (Pl. Opp. 11). Plaintiff argues further that given the specificity of the time frames and conditions in § 1681c(a)(4) and § 380-j(f)(1)(iv), any person reading the Amended Complaint would conclude that he had sufficiently alleged that his loans were placed for collection more than seven years (or five years) prior to the issuance of the report. (*Id.*). These arguments — equal parts conclusory and circular — are insufficient to survive a motion to dismiss. A plaintiff, even one proceeding *pro se*, must plead factual allegations specific "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. But Plaintiff's allegations here are purely speculative, and the Court cannot conclude that Plaintiff has raised a right to relief simply because he has recited the elements of the relevant statutes. *See Harris*, 572 F.3d at 72.

Moreover, Plaintiff's attached exhibits undercut his own argument regarding whether Defendant has reported the six loans beyond the allowed statutory period. *See L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (explaining that allegations are not assumed to be true when contradicted by documentary evidence). Plaintiff has provided printouts from the National Student Loan Data System ("NSLDS") that provide a chronology of each loan's payment status at different periods in that loan's life. (*See* Pl. Opp., Ex. 3.1-3.4, 3.7-3.8). These printouts show that the six loans all were reported

as having defaulted in either April or July of 2013.  Plaintiff has also provided

years' worth of dispute and credit reports from Defendant.  (Dkt. #44-5, 44-6,

44-7).  A careful review of these reports indicates that Plaintiff failed to make

payments on all six loans in June 2012.  (*See* Pl. Opp., Ex. 6.15 (showing a

code in September 2012 indicating the account was 90 days past due for all six

loans)).  These reports also indicate that all six of the loans entered collection

and were assigned to the Government, with the two May 2011 loans entering

collection in August 2017; one of the August 2002 loans entering collection in

February 2014; the other August 2002 loan entering collection in March 2014;

the September 2001 loan entering collection in January 2014; and the January

2002 loan also entering collection in January 2014.  (*See id.*, Ex. 8.3).  Given

this information, Plaintiff cannot plausibly state a claim under either the FCRA

or NYFCRA.  Even taking as true Plaintiff's allegation that all the loans are now

paid (*see id.* at 11), the shorter five-year period of § 380-j(f)(1)(iv), dating from

when the loan entered collection, for the earliest of these loans would not have

expired until January 2019, almost three years after Plaintiff began disputing

these loans and five months after Plaintiff brought this action.  Therefore,

Plaintiff's claims under § 1681c(a)(4) and (5) of the FCRA and § 380-j(f)(1)(iv) of

the NYFCRA must fail.

### 3. Plaintiff Has Failed to State a Claim Under § 1681e(b) of the FCRA and §§ 380-j(e) and 380-k of the NYFCRA

Plaintiff additionally alleges that Defendant has run afoul of the FCRA

and the NYFCRA by preparing consumer reports with "inaccurate, misleading,

prohibited, or unverifiable information" regarding the six student loans at

issue. (Am. Compl. ¶¶ 62, 85). In this regard, § 1681e(b) of the FCRA provides

that "[w]henever a consumer reporting agency prepares a consumer report it

shall follow reasonable procedures to assure maximum possible accuracy of

the information concerning the individual about whom the report relates."

Section 380-j(e) of the NYFCRA offers substantially similar language, and

§ 380-k provides that every "reporting agency shall maintain reasonable

procedures designed to avoid violations of section[] … three hundred eighty-j …

of this article."

When addressing a claim under § 1681e(b), "[t]he threshold question is

whether the challenged credit information is accurate; if the information is

accurate, no further inquiry into the reasonableness of the consumer reporting

agency's procedures is necessary." *Khan* v. *Equifax Info. Servs., LLC*, No. 18

Civ. 6367 (MKB), 2019 WL 2492762, at *2 (E.D.N.Y. June 14, 2019) (quoting

*Neclerio* v. *Trans Union, LLC*, 983 F. Supp. 2d 199, 209 (D. Conn. 2013)). "[T]he

overwhelming weight of authority holds that a credit report is inaccurate either

when it is patently incorrect or when it is misleading in such a way and to such

an extent that it can be expected to have an adverse effect." *Id.* at *3 (internal

ellipses and quotation marks omitted) (emphasis removed) (collecting cases).

In his Amended Complaint, the only non-conclusory allegation Plaintiff

makes regarding the accuracy of the challenged credit information is that

Defendant reported "paid student loans as unpaid." (Am. Compl. ¶ 7).

Otherwise, Plaintiff alleges merely that Defendant violated the FCRA and

NYFCRA by "reporting inaccurate, unverifiable or misleading information" (*see,*

*e.g.*, *id.* at ¶ 13), which amounts to no more than a "threadbare recital" of the claim, *see Iqbal*, 556 U.S. at 678. However, Plaintiff's allegation that Defendant has misreported the status of his six student loans is, as with Plaintiff's § 1681c(a)(4) claim, undercut by Plaintiff's own exhibits. *See L-7 Designs*, 647 F.3d at 422. Plaintiff filed his Amended Complaint in February 2019 (Dkt. #31). The credit report nearest in time to that filing, dating from November 28, 2018, shows that Defendant reported all six disputed accounts as neither paid nor unpaid, but as in collection and assigned to the Government. (*See* Pl. Opp., Ex. 8.3). Critically, Plaintiff concedes that the six loans were placed for collection. (*See* Pl. Reply 4). Given Plaintiff's acknowledgement that Defendant correctly reported the status of these six loans, Plaintiff's allegations in his Amended Complaint are insufficient to survive a motion to dismiss.

The Court's inquiry does not end there, though, as Plaintiff has also raised additional allegations of inaccuracy in his opposing brief, which the Court is obliged to consider given Plaintiff's *pro se* status. *See Rogers* v. *Fashion Inst. of Tech.*, No. 14 Civ. 6420 (AT), 2016 WL 889590, at *1 (S.D.N.Y. Feb. 26, 2016). These allegations involve various supposed inconsistencies in Defendant's credit reports. The Court will not recite all of Plaintiff's allegations, preferring instead to provide a representative sample:

> ▪ In paragraph 9, Plaintiff alleges that in a credit report from January 6, 2016, one of the May 2011 loans has a "first reported" date of December 2013, which Plaintiff claims makes the debt appear more recent than it really is. (*See* Pl. Opp. 18). Regarding that same credit report and loan, Plaintiff also alleges that the loan is reported

as past due as of December 2015 while also being noted as being in collection since December 2013. (*See id.*).

- In paragraph 12, Plaintiff claims that in the same January 6, 2016 credit report, Defendant reported two separate loans, one opened in September 2001 and another in January 2002, while his NSLDS records show a single loan with two disbursements in those months. (*See id.* at 20).

- As a final example, in paragraph 14, Plaintiff alleges that in a report dated from May 16, 2016, Defendant erroneously stated that all six of the relevant loans had a term of 36 months. (*See id.* at 21).

As Defendant notes in its reply brief, some of Plaintiff's new allegations fail because they are time-barred. (*See* Def. Reply 9). Paragraphs 1 through 8 in Plaintiff's opposing brief all relate to reports dating from January 2012 or earlier (*see* Pl. Opp. 16-18), but FCRA claims expire on the earlier of two years after the discovery of the violation or five years after the date on which the violation occurred, 15 U.S.C. § 1681p. NYFCRA claims expire two years from either the date of the violation or discovery of the violation. N.Y. Gen. Bus. Law § 380-n. Therefore, Plaintiff cannot rely on these allegations in order to state a cognizable claim.

Plaintiff's other allegations are also defective, largely because they fail to overcome the minimal hurdle set by *Iqbal* and *Twombly*. Indeed, Plaintiff's allegations in many ways resemble those presented to a sister court in this District, *Gestetner* v. *Equifax Info. Servs. LLC*, No. 18 Civ. 5665 (JFK), 2019 WL 1172283, at *2 (S.D.N.Y. Mar. 13, 2019). In that case, the plaintiff argued that his credit report was inaccurate because it showed a first delinquency date of September 2010 and a second delinquency date of November 2010, both of

13

which were inconsistent with a first delinquency date of January 2011 listed elsewhere on the account. *See Gestetner*, 2019 WL 1172283, at *2. The plaintiff claimed that because the two dates in 2010 came before the allegedly correct delinquency date in January 2011, the two 2010 dates must have been incorrect. *See id.*

Regarding this inconsistency, the court wrote, "Absent from the complaint … are any factual allegations explaining why having multiple delinquency dates listed in this manner necessarily makes the first two false." *Gestetner*, 2019 WL 1172283, at *2. The court further stated that the allegation was insufficient because it did not explain, for instance, that "a 'first delinquency date' means the first time, in the entire account history, that the user was delinquent." *See id.* Absent an explanation of why such purported inconsistencies amounted to inaccuracies, the allegations were "nothing more than 'mere conclusory statements' and 'threadbare recitals of the elements of a cause of action' … that [would] not survive a motion to dismiss." *Id.* (quoting *Iqbal*, 556 U.S. at 678). The plaintiff also alleged that the reports showed a "new late date" of April 2017, occurring after a "dating of closing" in May 2011, and that this inconsistency rendered the report "misleading and incorrect." *See id.* The court again noted that there was no "explanation as to why listing a new late date after an account's closing date necessarily [made] that late date 'misleading and incorrect,'" and that without such a pleading the allegation failed to meet *Iqbal*'s standard. *Id.*

Similarly to *Gestetner*, almost all of Plaintiff's allegations raise purported inconsistencies without pleading any explanation as to why these supposed inconsistencies are inaccurate. For example, Plaintiff does not provide any explanation as to why it is inaccurate that the May 2011 loan was reported in January 2016 as being past due as of December 2015 *and* in collection since December 2013. Other supposed inaccuracies attempt to provide an explanation, such as Plaintiff's claim that the two-year delay between the May 2011 loan's opening and its "first reported" date makes it seem as if the debt is newer. (*See* Pl. Opp. 18). However, Plaintiff does not plead facts sufficient to show that the inconsistency is either "patently incorrect or ... misleading in such a way and to such an extent that it can be expected to have an adverse effect." *See Khan*, 2019 WL 2492762, at *3. Without such allegations, Plaintiff's claim does not meet *Iqbal*'s and *Twombly*'s plausibility standard.

In fact, the only allegation that would seem to provide a claimed inaccuracy and a clear reason for that inaccuracy is the allegation in paragraph 14, regarding the reported payment term of 36 months. Plaintiff explains that this term is inaccurate because "borrowers usually have 10 years or more to repay Federal Educational Loans under various repayment programs." (*See* Pl. Opp. 21). However, the potency of this allegation is diluted once again by Plaintiff's own exhibits, which clearly show that the 36-month term only appears after Plaintiff's loans enter collection and are assigned to the Government. (*See, e.g.,* Pl. Opp., Ex. 6.17). Prior to that event, Defendant's

15

reports state terms of 120 months — ten years — and similar durations. (*See, e.g.*, Pl. Opp., Ex. 6.16). The fact that Plaintiff's loan terms changed from ten years to 36 months when the loans entered collection and were assigned to the Government does not indicate that the 36-month term is patently incorrect or sufficiently misleading to raise a claim under § 1681e(b).[6] Therefore, Plaintiff's allegations and arguments, including those contained in his opposing papers, are insufficient to survive a motion to dismiss.

### 4. Plaintiff Has Failed to State a Claim Under § 1681g of the FCRA and § 380-d of the NYFCRA

Plaintiff alleges that Defendant has failed to comply with § 1681g(a)(1) of the FCRA and § 380-d of the NYFCRA by refusing to provide him with the ACDVs and UDFs that Defendant used in its communications with Plaintiff's creditors and other third parties. (*See* Am. Compl. ¶¶ 92-103). Section 1681g of the FCRA provides that "every consumer reporting agency shall, upon request ... clearly and accurately disclose to the consumer ... [a]ll information in the consumer's *file* at the time of the request." 15 U.S.C. § 1681g(a)(1) (emphasis added). Section 380-d of the NYFCRA provides almost identical language. N.Y. Gen. Bus. Law § 380-d(a)(1).

ACDVs and UDFs are internal records that consumer reporting agencies ("CRAs") like Defendant use to investigate consumer disputes. *See Selvam* v.

---

[6] Courts typically "interpret the FCRA and related New York statute similarly," *Trikas* v. *Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 46 (E.D.N.Y. 2005) (quoting *Ali* v. *Vikar Mgmt. Ltd.*, 994 F. Supp. 492, 498 (S.D.N.Y. 1998)). Therefore, the Court's analysis of Plaintiff's claims under § 1681e(b) of the FCRA applies equally to his claims under §§ 380-j(e) and 380-k of the NYFCRA.

*Experian Info. Sols., Inc.*, No. 12 Civ. 1828 (DLI) (JO), 2015 WL 1321615, at *2 (E.D.N.Y. Mar. 24, 2015), *vacated on other grounds*, 651 F. App'x 29 (2d Cir. 2016) (summary order). "An ACDV is sent to the furnisher of the disputed information and asks the furnisher to verify, amend, or delete the reported information." *See id.* Plaintiff argues in his Amended Complaint and in his briefing that ACDVs and UDFs are a part of Plaintiff's "file," and urges the Court to adopt his interpretation of that word. (*See* Am Compl. ¶¶ 92-103; *see also* Pl. Opp. 22-28). The core question, therefore, in resolving Plaintiff's claims under § 1681g of the FCRA and § 380-d of the NYFCRA is what constitutes Plaintiff's "file."

Although the Second Circuit has yet to address the definition of the word "file" for the purposes of the FCRA, other courts have offered guidance on the subject. In *Gillespie* v. *Trans Union Corp.*, the Seventh Circuit analyzed whether the word "file" included the consumer's "purge date," or the date on which information about a delinquent account would be removed from the consumer's report. *See* 482 F.3d 907, 908 (7th Cir. 2007). The Seventh Circuit first looked to the plain language of § 1681g and found that it favored a narrow reading of "file," given that a broad reading would render subsequent paragraphs superfluous. *See id.* at 909. Such a narrow reading, limiting the word "file" to "information included in a consumer report," was further supported by the legislative history and by the Federal Trade Commission's non-binding interpretation of the term. *See id.* at 909-10. The Seventh Circuit

found that the "purge date" was not included in the consumer's "file." *See id.* at 908.

The Third Circuit also addressed the definition of "file" in *Cortez* v. *Trans Union, LLC*, 617 F.3d 688, 711-12 (3d Cir. 2010). In that case, the Third Circuit considered whether § 1681g mandated disclosure of the fact that the plaintiff appeared on the Office of Foreign Assets Control's ("OFAC") list of individuals under Treasury Department sanctions. *See Cortez*, 617 F.3d at 711. Such information was visible on a Trans Union credit report provided to a car dealership, but was not disclosed on the credit report the plaintiff herself received from Trans Union. *See id.* at 697-98. In its analysis, the Third Circuit adopted *Gillespie*'s limitation of "file" to "all information furnished or that might be furnished in a consumer report." *See id.* at 711. However, the *Cortez* court distinguished the need to disclose an OFAC alert in its case from the purge date in *Gillespie* by finding that the purge date was "an internal record-keeping item" that did not usually appear on credit reports provided to creditors or consumers, *see id.* at 712, as opposed to an OFAC alert that is "far more than a mere internal record-keeping mechanism," *see id.* Given that distinction, the Third Circuit held that "information relating to [an] OFAC alert is part of the consumer's 'file' as defined in the FCRA." *Id.*

Other courts have more or less followed *Gillespie*'s and *Cortez*'s leads. *See, e.g., Shaw* v. *Experian Info. Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018) ("A consumer's file includes 'all information on the consumer that is recorded and retained by a [CRA] that might be furnished, or has been furnished, *in a*

*consumer report* on that consumer." (emphasis added) (quoting *Gillespie*, 482 F.3d at 909)); *Danehy* v. *Experian Info. Sols., Inc.*, No. 18 Civ. 17 (FL), 2018 WL 4623647, at *3 (E.D.N.C. Sept. 26, 2018) (defining "file" the same way).

As contrary authority, Plaintiff relies heavily on *Goode* v. *LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 544-46 (E.D. Pa. 2012). In that case, the defendant operated a system that helped organizations identify applicants with a history of theft or fraud. *See Goode*, 848 F. Supp. 2d at 534. The defendant had in its system an admission statement — "a statement describing the incident [of theft] and admitting guilt signed by the person who committed the theft" — regarding the plaintiff, *see id.* at 535, and the defendant did not disclose that admission statement to the plaintiff when it was requested, *see id.* at 536. The *Goode* court, relying in part on a finding that a primary purpose of § 1681g(a)(1) "is to allow consumers to identify inaccurate information in their credit files and correct this information," *see id.* at 545, held that the admission statement was "clearly part of the file" under a plain reading of § 1681g(a)(1) because it was "the most important part of the file," providing the "only evidence of the theft incident underlying the report," *see id.* at 545-46. The court rejected *Gillespie*'s application to the case, reading *Gillespie* to apply when a plaintiff has requested "internal record-keeping data," as opposed to information that is more directly relevant to the generation of the consumer report. *See id.* at 545. The court also expressly rejected any interpretation of the word "file" that would make it synonymous with the term "consumer report," finding that doing so would render § 1681g(a)(1)

superfluous, given § 1681b(b)(3)(A)'s mandated provision of a copy of the consumer's report. *See id.*

Defendant would have the Court follow *Gillespie* and adopt a narrow interpretation of "file," equating that word with "information included in a consumer report." (*See* Def. Br. 7). The Court cannot agree with such a narrow interpretation, given the plain text of the statute. *Compare* 15 U.S.C. § 1681a(d)(1), *with* 15 U.S.C. § 1681a(g) (providing differing definitions for "consumer report" and "file"). Conversely, the Court cannot find that the word "file" encompasses a consumer's "entire files in whatever form maintained by the" reporting agency, insofar as § 1681g(a)(1) is concerned. *See Gillespie*, 482 F.3d at 909. Instead, the Court concludes that ACDVs and UDFs do not fall within the definition of "file," however broad that definition may be.

In coming to this decision, the Court is guided by many of the same considerations as the *Gillespie* court. *First*, the structure of § 1681g(a) undercuts such a broad interpretation. While § 1681g(a)(1) calls for the disclosure of "[a]ll information in the consumer's file," the subsections that follow list various other pieces of information that the reporting agency is required to disclose in addition to the information in the consumer's file, including, *inter alia*, "the sources of the information," identification of persons who procured the consumer's report, and the dates, original payees, and amounts of certain checks. 15 U.S.C. § 1681g(a)(2)-(6). If the Court were to interpret the word "file" to include all information the reporting agency has about the consumer, it would render, as *Gillespie* recognized, all of the

subsections of § 1681g(a), save the first, superfluous. *See Gillespie*¸ 482 F.3d at 909. The Court will not render inoperative almost the entirety of § 1681g(a). *See United States* v. *Harris*, 838 F.3d 98, 106 (2d Cir. 2016) ("[C]ourts must give effect to all of a statute's provisions so that no part will be inoperative or superfluous, void or insignificant." (internal quotation marks omitted)).

*Second*, the Court similarly finds the legislative history illuminating. *See United States* v. *Gayle*, 342 F.3d 89, 93-94 (2d Cir. 2003) (explaining that courts may consult legislative history to resolve textual ambiguity). As *Gillespie* noted, *see* 482 F.3d at 909, the Senate Committee Report discussing the 1996 amendments to the FCRA shows that the language "all information in the consumer's file" was intended "to ensure that a consumer will receive a copy of that consumer's report, rather than a summary of the information contained therein." S. Rep. No. 104-185, at 41 (1995). Although the Court will not defer completely to the Committee Report due to its inconsistency with § 1681a(g)'s statutory definition of "file,"[7] the Court reads it to find support for the conclusion that Congress did not intend for § 1681g(a)(1) to require the disclosure of all information about a consumer in a reporting agency's possession.

Having found that § 1681g(a)(1) requires the disclosure of more than just a consumer's report but less than all the reporting agency's information, the question remains whether the FCRA mandates the disclosure of ACDVs and

---

[7] "The term 'file', when used in connection with information on any consumer, means all of the information on that consumer record and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g).

UDFs.  In resolving this question, the Court finds both *Cortez* and *Goode*

persuasive.  As previously discussed, both courts found that § 1681g(a)(1) did

not require the disclosure of "internal record-keeping mechanisms," such as

the purge dates at issue in *Gillespie*.  *See Cortez*, 617 F.3d at 712; *see also*

*Goode*, 848 F. Supp. 2d at 545.  Thus, even if the Court were to adopt the

broadest possible definition of "file" suggested by the case law, it would still

find that ACDVs and UDFs are far closer to the purge dates in *Gillespie* than to

the OFAC alert in *Cortez* or the admission statement in *Goode*.  Much as

reporting agencies such as Trans Union use the date of delinquency and purge

date to determine, for their own purposes, when information should be

removed from a consumer's report, *see Gillespie*, 482 F.3d at 908, Defendant

uses the ACDVs and UDFs to determine, for its own purposes, whether a

disputed account is verified, should be deleted, or should be updated (*see* Def.

Br. 8).  The ACDVs and UDFs are "internal records relating to the CRA's

processing of the information in the reports," as opposed to a key piece of

information that consumers would need to "identify inaccurate information in

their credit files and correct this information."  *See Goode*, 848 F. Supp. 2d at

544, 546.  Thus, even if the Court followed *Goode*'s broader interpretation of §

1681g(a)(1), it is clear that ACDVs and UDFs would not fall within that

subsection's scope.  Accordingly, the Court holds that ACDVs and UDFs are

not part of a consumer's "file," and Plaintiff has therefore failed to state a

claim[8] under § 1681g of the FCRA and § 380-d of the NYFCRA.[9]

## B. The Court Denies Plaintiff's Motion for a Preliminary Injunction

In his Amended Complaint, Plaintiff renews his request that the Court

enjoin Defendant from continuing its alleged violations of § 1681c(a)(4) of the

FCRA[10] and § 380-j(f)(1)(iv) of the NYFCRA. (Am. Compl. ¶¶ 104-06). To

review, those subsections of the FCRA and NYFCRA deal with the time period

after which a consumer reporting agency may not report a delinquent account.

*See* 15 U.S.C. § 1681c(a)(4); N.Y. Gen. Bus. Law § 380-j(f)(1)(iv). The parties

vigorously dispute whether the FCRA and the NYFCRA provide for injunctive

relief, with both sides providing compelling citations to authority. (*See* Def.

Br. 8-10; Pl. Opp. 36-58). However, the Court has no need to enter that fierce

debate at this time. "[A] party seeking a preliminary injunction must

demonstrate that it will suffer irreparable harm absent injunctive relief," among

other requirements. *Mullins* v. *City of N.Y.*, 626 F.3d 47, 52-53 (2d Cir. 2010).

---

[8]    In his Amended Complaint, Plaintiff also requests injunctive relief and a declaratory judgment on the basis of Defendant's alleged violations of § 1681g of the FCRA and § 380-d of the NYFCRA. (Am. Compl. ¶¶ 104-07). Given that Plaintiff has failed to state a claim under either statute, his requests for injunctive and declaratory relief are denied. The Court comes to this conclusion without deciding whether the FCRA or NYFCRA would permit a private plaintiff to seek a declaratory judgment.

[9]    As far as the Court is aware, there is no case law interpreting the word "file" as it is provided in § 380-d(a)(1) of the NYFCRA. However, as previously mentioned, "courts interpret the FCRA and related New York statute similarly," *Trikas*, 351 F. Supp. 2d at 46, and thus the reasoning provided with regard to § 1681g of the FCRA would also apply to § 380-d of the NYFCRA.

[10]    Although Plaintiff only requests injunctive relief as to the NYFCRA in his Amended Complaint, the Court acknowledges Plaintiff's lengthy briefing about the possibility of injunctive relief under the federal statute and therefore construes Plaintiff's pleadings, consistent with his *pro se* status, as requesting injunctive relief under the FCRA as well.

Given that the Court has already found that Plaintiff has failed to state a claim under both § 1681c(a)(4) of the FCRA and § 380-j(f)(1)(iv) of the NYFCRA, Plaintiff cannot show that he will suffer irreparable harm because he is, in fact, suffering no harm that is prohibited by those statutes.

Moreover, even if Plaintiff had successfully stated a claim under either statute, his request for injunctive relief would fail because his claims have been mooted. Defendant has provided evidence showing that the six student loans at issue in this action were deleted in March 2019, pursuant to Defendant's policy of purging negative information six years and nine months from the original delinquency date reported. (*See* Dkt. #59-1; Def. Reply, Ex. A). Thus, even if the six accounts were reported beyond the allowed statutory period when Plaintiff brought this action, they are no longer on Plaintiff's report and there is therefore no conduct to enjoin.

Plaintiff argues that he is still entitled to injunctive relief because the deletion of the accounts qualifies as a "voluntary cessation," a recognized exception to mootness. (*See* Pl. Reply 1-3). "Voluntary cessation does not moot a case or controversy unless subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Doe* v. *Decker*, No. 18 Civ. 3573 (GBD) (KNF), 2019 WL 2513838, at *3 (S.D.N.Y. June 18, 2019) (internal brackets omitted) (quoting *Parents Involved in Cmty. Sch.* v. *Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007)). The standard for determining whether a case has been mooted is "stringent," and the "heavy burden" of persuasion "lies with the party asserting mootness."

24

*Friends of the Earth, Inc.* v. *Laidlaw Envtl. Servs. (TOC). Inc.*, 528 U.S. 167, 189 (2000).

As a preliminary matter, it is unclear whether Defendant's cessation in this instance qualifies as voluntary, given that it was simply the execution of longstanding corporate policy. (*See* Def. Reply 3). However, even if it does qualify as voluntary, Defendant has satisfied the heavy burden of showing that its allegedly wrongful behavior could not reasonably be expected to recur. The accounts have been purged from the report, and there is no mechanism by which the information can reappear on the report. This holds true even if one considers whether or not "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *See Mhany Mgmt., Inc.* v. *Cty. of Nassau,* 819 F.3d 581, 603 (2d Cir. 2016). Plaintiff has made no showing as to how he might still be affected by the alleged violation now that it has ceased. Plaintiff would not be able to make such a showing, though, since it is clear that the deletion of the accounts from the reports fully remedies Plaintiff's harm, and that such harm cannot be reasonably expected to recur. *Cf. Norman-Bloodsaw* v. *Lawrence Berkeley Lab.*, 135 F.3d 1260, 1275 (9th Cir. 1998) (finding case not moot where defendants' retention of unlawfully collected test results constituted ongoing harm, despite cessation of actual testing) (cited approvingly by *Am. Freedom Def. Initiative* v. *Metro. Transp. Auth.*, 815 F.3d 105, 110 (2d Cir. 2016)). Therefore, Defendant has met its burden of demonstrating that Plaintiff's case is moot, regardless of whether Defendant's action was voluntary or not.

In sum, the Court finds that Plaintiff has failed to state any claim upon which relief can be granted, under either the FCRA or the NYFCRA, and it grants Defendants motion to dismiss the Amended Complaint. The Court also finds that Plaintiff is not entitled to a preliminary injunction because his claims are moot.

## C.  The Court Will Permit Plaintiff to File a Motion for Leave to File a Second Amended Complaint

The Court has already afforded Plaintiff an opportunity to amend his initial Complaint, and Plaintiff has not sought leave to file a Second Amended Complaint. *Cf. Dolan* v. *Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) ("[A] *pro se* complaint should not [be] dismiss[e]d without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."). However, in recognition of his *pro se* status, the Court will permit Plaintiff, if he wishes, to move for leave to file a Second Amended Complaint. Included with any such motion must be a proposed complaint, which would have to address, among other issues, the manner in which Defendant's reports were inaccurate, why any purported inconsistencies amounted to actionable inaccuracy, and in what way Defendant failed to follow reasonable procedures in preparing its reports.

## CONCLUSION

For the reasons set forth in this Opinion, Defendant's motion to dismiss is GRANTED. Furthermore, Plaintiff's motion for a preliminary injunction is DENIED. On or before **January 31, 2020**, Plaintiff may file a motion for leave to file a Second Amended Complaint in the manner outlined above. If Plaintiff

files such a motion, the Court will set a briefing schedule for Defendant's response.

The Clerk of Court is directed to terminate the motion at docket number 33.

SO ORDERED.

Dated:      December 17, 2019
            New York, New York

_____
        KATHERINE POLK FAILLA
        United States District Judge