```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  2/1/2021____
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON WIMBERLY,

                              Plaintiff,

        -against-

EXPERIAN INFORMATION SOLUTIONS,

                              Defendant.

1:18-cv-6058-MKV

OPINION AND ORDER DENYING
MOTION FOR LEAVE TO FILE A
SECOND AMENDED COMPLAINT

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Jason Wimberly ("Plaintiff"), proceeding *pro se*, brings this action against Defendant Experian Information Solutions ("Defendant"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x, and the New York Fair Credit Reporting Act ("NYFCRA"), N.Y. Gen. Bus. Law §§ 380–380-v.  On December 18, 2019, the Court (Failla, *J.*) granted Defendant's Motion to Dismiss Plaintiff's Amended Complaint and denied Plaintiff's Motion for a Preliminary Injunction.  (Opinion & Order [ECF No. 65].)  *Wimberly v. Experian Info. Sols.*, No. 18 Civ. 6058 (KPF), 2019 WL 6895751 (S.D.N.Y. Dec. 18, 2019).  In so doing, the Court granted Plaintiff leave to file a motion to further amend his Complaint.  (Opinion & Order 26.)  *Wimberly*, 2019 WL 6895751, at *11.

Before the Court is Plaintiff's Motion for Leave to File a Second Amended Complaint ("Motion to Further Amend") (Mot. Further Amend [ECF No. 79]), which he filed with the Proposed Second Amended Complaint (Second Am. Compl. ("SAC") [ECF No. 79-1]) and a brief in support of the Motion to Further Amend (Pl.'s Br. [ECF No. 87]).  Defendant opposes Plaintiff's Motion to Further Amend.  (Def.'s Opp. [ECF No. 88].)  Having carefully reviewed the Proposed Second Amended Complaint and the parties' briefs, the Court DENIES Plaintiff's Motion to Further Amend.

## BACKGROUND

The Court assumes the parties' general familiarity with the underlying facts and procedural history of the case, which are set forth in the prior decision of the Court.  (Opinion & Order.) *Wimberly*, 2019 WL 6895751.  The Court discusses factual allegations in the Proposed Second Amended Complaint as they relate to particular causes of action and the Court's analysis.  It bears emphasizing that Plaintiff first amended the Complaint after a conference where the parties discussed particular pleading deficiencies, yet the Amended Complaint failed to state a claim.  (*See* Tr. Conf. Jan. 17, 2019 [ECF No. 37].)

In its prior decision, in recognition of his *pro se* status, the Court permitted Plaintiff to move for leave to file a Second Amended Complaint.  (Opinion & Order 26.)  *Wimberly*, 2019 WL 6895751, at *11.  The Court explained, "Included with any such motion must be a proposed complaint, which would have to address, among other issues, the manner in which Defendant's reports were inaccurate, why any purported inconsistencies amounted to actionable inaccuracy, and in what way Defendant failed to follow reasonable procedures in preparing its reports." (Opinion & Order 26.)  *Wimberly*, 2019 WL 6895751, at *11.

## LEGAL STANDARDS

### I.    Leave to Amend Standard

"When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."  *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) (citing *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)).  A *pro se* plaintiff "should be afforded every reasonable opportunity to demonstrate that he has a valid claim."  *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (quoting *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984)).  Thus, "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal

reading of the complaint gives any indication that a valid claim might be stated." *Nielson v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).

However, when there is no indication that a valid claim might be stated, a district court has discretion to deny leave to amend. *Perri v. Bloomberg*, No. 11–CV–2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012) (citing *Chavis*, 618 F.3d at 170). In other words, leave to amend may be denied if an amendment would be futile—that is, "a proposed claim could not withstand a motion to dismiss pursuant to 12(b)(6)." *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). "Determinations of futility are made under the same standards that govern Rule 12(b)(6) motions to dismiss." *Nettis v. Levitt*, 241 F.3d 186, 194 n.4 (2d Cir. 2001), *overruled on other grounds by Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006).

## II.    Rule 12(b)(6) Motion to Dismiss Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While a sufficiently pleaded complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks, alterations, and citations omitted); *see also Iqbal*, 556 U.S. at 678 (noting that

3

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (citing *Twombly*, 550 U.S. at 555)).

In ruling on a motion to dismiss, the Court must "accept as true all factual allegations," *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (quoting *Nielsen*, 746 F.3d at 62), and "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff," *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (citing *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007); and *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)).  However, the Court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations."  *Dale v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188–89 (2d Cir. 2020) (quoting *Nielsen*, 746 F.3d at 62); *see also Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019); *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

A complaint filed by a *pro se* plaintiff "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests."  *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)); *see also Wilson v. Dalene*, 699 F. Supp. 2d 534, 554 (E.D.N.Y. 2010) (noting that courts are "required to afford [a *pro se* plaintiff] leniency, holding his complaint to 'less stringent standards than formal pleadings drafted by lawyers'" (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))).  Nevertheless, the complaint must satisfy the *Twombly-Iqbal* plausibility standard.  *See Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 80–81 (2d Cir. 2020).  "[T]o survive a Rule 12(b)(6) motion, a *pro se* plaintiff must support his claims with 'specific and detailed factual allegations, not stated in wholly conclusory terms.'"  *Wightman–Cervantes v. ACLU*, No. 06 Civ. 4708, 2007 WL 1805483, at *1 (S.D.N.Y. June 25, 2007) (quoting *Friedl v. City of New York*, 210 F.3d 79, 85–86 (2d Cir. 2000)).

4

In deciding a Rule 12(b)(6) motion, the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); and *Hayden*, 180 F.3d at 54), as well as any document "upon which the complaint solely relies and which is integral to the complaint," *Roth*, 489 F.3d at 509 (emphasis and alteration omitted) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)). "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Chambers*, 282 F.3d at 153).

"The Court's obligation to construe *pro se* submissions liberally does not require the Court to accept allegations that are contradicted by documents incorporated by reference in the complaint." *Edwards v. Elmhurst Hosp. Ctr.*, Nos. 11 CV 5348(RRM)(LB), 11 CV 5349(RRM)(LB), 2013 WL 839554, at * (E.D.N.Y. Feb. 4, 2013) (citing *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005); and *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 399–400 (S.D.N.Y. 2002)). Thus, "[w]hen documents attached to the complaint as exhibits or incorporated by reference in the complaint contain statements that contradict the allegations in the complaint, the documents control and the Court need not accept the allegations as true." *Endemann v. Liberty Ins. Corp.*, 390 F. Supp. 3d 362, 370 (N.D.N.Y. 2019) (collecting cases); *see L-7 Designs, Inc v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (noting that allegations are "assume[d] to be true unless contradicted by more specific allegations or documentary evidence").

## DISCUSSION

In the Proposed Second Amended Complaint, Plaintiff alleges causes of action for (1) failure to follow procedures to assure maximum possible accuracy under the FCRA and the

NYFCRA (Counts I and II) (SAC 11–18); (2) reporting obsolete information under the FCRA and the NYFCRA (Counts III and IV) (SAC 18–21); (3) failure to disclose information in Plaintiff's file under the FCRA and the NYFCRA (Counts V and VI) (SAC 21–26); (4) failure to notify Plaintiff of reinsertion of previously deleted material under the FCRA (Count VII) (SAC 26–27); (5) failure timely to notify furnishers of a dispute under the FCRA (Count VIII) (SAC 27); (6) failure to advise on availability of disclosure of files under the NYFCRA (Count IX) (SAC 27); (7) failure to conduct a reasonable investigation under the FCRA and NYFCRA (Counts X and XI) (SAC 28–29); and (8) mental anguish and suffering, which the Court construes as a claim for intentional infliction of emotional distress (Count XII) (SAC 29–30).

Plaintiff's proposed causes of action fall into three categories: (1) those that reiterate previously dismissed claims; (2) those that were previously rejected but have been amended with new allegations; and (3) those presented for the first time in the Proposed Second Amended Complaint.

I.   **Plaintiff's Proposed Causes of Action for Failure To Disclose Information in Plaintiff's File Are Foreclosed by the Court's Prior Ruling (Counts V–VI)**

Plaintiff again seeks to assert claims predicated on allegations that Defendant failed to disclose Automated Credit Dispute Verifications ("ACDVs") and Universal Data Forms ("UDFs"), in violation of Section 1681g of the FCRA and Section 380-d of the NYFCRA. (SAC 21–26.)  In the Proposed Second Amended Complaint, Plaintiff repeats his allegation that several times he requested ACDVs in connection with the accounts at issue only for Defendant to respond that these forms were only available with a subpoena.  (SAC 21.)

Plaintiff's proposed claims under Section 1681g of the FCRA and Section 380-d of the NYFCRA clearly are foreclosed by the law of case doctrine.  The doctrine posits that "when a court decides upon a rule of law, that decision should continue to govern the same issues in

subsequent stages in the same case." *Musacchio v. United States*, ___ U.S. ____, 136 S. Ct. 709, 716 (2016) (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)).  This principle "holds true even where a case has been reassigned to a new judge." *Laurent v. PriceWaterhouseCoopers LLP*, 963 F. Supp. 2d 310, 314 (S.D.N.Y. 2013) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 733 F.2d 10, 13 (2d Cir. 1984)); *see also Lillback ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 94 (2d Cir. 2005) (internal quotation marks omitted) (noting that courts are "reluctant to reopen a ruling once made, especially when one judge or court is asked to consider the ruling of a different judge or court" (citation omitted)).  Departure from a prior ruling is proper only where there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

In granting Defendant's Motion to Dismiss, Judge Failla held that "ACDVs and UDFs are not part of a consumer's 'file,' and Plaintiff has therefore failed to state a claim under § 1681g of the FCRA and § 380-d of the NYFCRA."  (Opinion & Order 22–23 (footnote omitted).)  *Wimberly*, 2019 WL 6895751, at *9 (footnote omitted).  Under the law of the case doctrine, that holding controls, and the Court will not revisit it here.  *See Schmidt v. Stone*, No. 14 CV 2519 (RJD) (CLP), 2018 WL 4522082, at *1 (E.D.N.Y. Jan. 29, 2018) (recommending denying leave to amend where "[t]he proposed Second Amended Complaint seeks to advance theories the district court has already rejected and which are barred by the law of the case doctrine"); *see also Klaper v. Cypress Hills Cemetery*, No. 10–CV–1811 (NGG)(LB), 2014 WL 1343449, at *4 (E.D.N.Y. Mar. 31, 2014) (noting that courts "may apply the law of the case doctrine to a legal determination made at the motion to dismiss stage" (collecting cases)).

Plaintiff presents no compelling reason to revisit that holding.  Plaintiff offers no new factual allegations and relies on the same cases as at the previous motion to dismiss stage to re-argue that ACDVs and UDFs fall within the scope of Section 1681g(a)(1).  (*Compare* SAC 21–22, 21 n.5, 24–25, *with* Pl.'s Opp. 22–28 [ECF No. 45].)  *See Marshall v. N.Y. State Pub. High Sch. Athletic Assoc., Inc.*, 374 F. Supp. 3d 276, 295 (W.D.N.Y. Mar. 15, 2019) (applying law of the case doctrine where defendant "failed to assert any reason—let along [sic] a 'cogent' or 'compelling' one—for this Court to depart from its previous decision"); *Frommert v. Becker*, No. 00-CV-6311, 2016 WL 9582834, at *5 (W.D.N.Y. Sept. 16, 2016) (denying motion that was merely "an attempt to reargue what is now the law of the case").  Accordingly, Plaintiff cannot state a claim for failure to disclose ACDVs and UDFs (Counts V–VI).

## II.   Plaintiff's New Allegations Fail To Cure Previously Identified Deficiencies

### A.   Failure To Follow Procedures To Assure Maximum Possible Accuracy and Failure To Conduct a Reasonable Investigation (Counts I, II, X, and XI)

Plaintiff again alleges that Defendant failed to follow procedures to assure maximum possible accuracy, in violation of Section 1681e(b) of the FCRA and Section 380-j(e) of the NYFCRA (Counts I and II).  He also alleges that Defendant failed to conduct a reasonable investigation, in violation of Section 1681i(a)(1)(A) of the FCRA and Section 380-k of the NYFCRA (Counts X and XI).[1]  With respect to his claims for failure to follow procedures to assure maximum possible accuracy, Plaintiff alleges that Defendant failed to maintain "a procedure to check the data of the true status of forborne or deferred loans," did no "real investigative work on

---

[1] Count X of the Proposed Second Amended Complaint asserts a claim for violation of "15 U.S.C. 1681(a)(1)(A)." (SAC 28.) There is no Section 1681(a)(1)(A) of the FCRA. Given Plaintiff's *pro se* status, the Court liberally construes this claim as an alleged violation of Section 1681i(a)(1)(A). Defendant has also addressed Plaintiff's alleged cause of action as an attempt to state a claim under Section 1681i(a)(1)(A). (*See* Def.'s Opp. 10 n.6.) Although Plaintiff did not previously assert Counts X and XI, the Court addresses them here because they fail for the same reasons as Counts I and II.

the disputes," and simply relied on Automated Credit Dispute Verifications ("ACDVs").  (SAC 12.)  With respect to his claims for failure to conduct a reasonable investigation, Plaintiff alleges that Defendant "did not review the history of the loans dating back to at least 2009 as previously reported by them during [2016]" and that Defendant's investigations "simply relied on the furnisher's erroneous statements and information."  (SAC 28–29.)

Section 1681e(b) of the FCRA provides, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b). Section 1681i outlines "procedures consumer reporting agencies must follow to investigate disputes as to the accuracy of reported information," including "reinvestigating a consumer's record within a reasonable period of time after a consumer 'directly conveys' a dispute as to the 'completeness or accuracy of an item on his credit report' to the consumer reporting agency."  *Khan v. Equifax Info. Servs., LLC*, No. 18-CV-6367 (MKB), 2019 WL 2492762, at *2 (E.D.N.Y. June 14, 2019) (first citing 15 U.S.C. § 1681e(b); then quoting *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997)).[2]

To state a claim under Section 1681e(b), a plaintiff must show that:

> (1) the consumer reporting agency was negligent or willful in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury.

---

[2] The Court need not separately discuss Sections 380-j(e) and 380-k of the NYFCRA because the NYFCRA's "substantially similar language is construed the same as the FCRA's." *Wenning v. On-Site Manager, Inc.*, No. 14 Civ. 9693 (PAE), 2016 WL 3538379, at *8 n.11 (S.D.N.Y. June 22, 2016) (citing *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10 Civ. 3760 (PAE), 2013 WL 1430467, at *7 n.6 (S.D.N.Y. Apr. 8, 2013)); *see also Trikas v. Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 46 (E.D.N.Y. 2005) (noting that "courts interpret the FCRA and related New York statute similarly" (quoting *Ali v. Vikar Mgmt. Ltd.*, 994 F. Supp. 492, 498 (S.D.N.Y. 1998))).

*Khan*, 2019 WL 2492762, at *2.  Similarly, a plaintiff asserting a claim under Section 1681i "must demonstrate that the disputed information is inaccurate."  *Id.* at *3 (quoting *Gestetner v. Equifax Info. Servs., LLC*, No. 18-CV-5665, 2019 WL 1172283, at *2 (S.D.N.Y. Mar. 13, 2019)).

The threshold question under Sections 1681e(b) and 1681i "is whether the challenged credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary."  *Id.* (alteration in original) (collecting cases).  A credit report is inaccurate "either when it is patently incorrect *or* when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect."  *Wenning*, 2016 WL 3538379, at *9 (internal quotation marks omitted) (collecting cases).  Information provided by a consumer reporting agency is misleading where it is "open to an interpretation that is directly contradictory to the true information."  *Id.* (citing *Wagner v. TRW, Inc.*, 139 F.3d 898, 1998 WL 127812, at *1 (5th Cir. 1998) (per curiam)).

Here, Plaintiff cannot state claims under Sections 1681e(b) or 1681i(a)(1)(A) of the FCRA, or the related NYFCRA provisions, because he has not shown that Defendant reported inaccurate information.  Judge Failla so ruled with respect to the Section 1681e(b) claim in the First Amended Complaint (Opinion & Order 10–16) *Wimberly*, 2019 WL 6895751, at *5–7, and Plaintiff's new allegations do not cure the identified deficiencies.  The Proposed Second Amended Complaint contains only vague and conclusory allegations that Defendant knowingly reported inaccurate information.  Plaintiff again pleads no specific *facts* to support his proposed claims that the information Defendant reported was inaccurate.  *See Khan*, 2019 WL 2492762, at *4 (dismissing claims under Sections 1681e(b) and 1681i "because [plaintiff] has not alleged facts showing that the information that Defendant reported about him is inaccurate" (citing *Gestetner*, 2019 WL 1172283, at *2)); *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10 CV 03760(GBD), 2011 WL

347222, at *3 (S.D.N.Y. Feb. 1, 2011) (dismissing claims under Sections 1681e(b) and 1681i because the complaint, *inter alia*, "does not identify the inaccurate information reported by each [consumer reporting agency] Defendant, or when the information was reported or to whom").

Plaintiff's proposed claims appear to center on his view that Defendant reported Plaintiff's student loans beyond the statutory periods in the FCRA and NYFCRA.  But as discussed below, despite his amended allegations, Plaintiff has not alleged facts to support such a claim.  *See infra* Discussion, Section II.B.  Because Plaintiff has not made a threshold showing of inaccurate or misleading information on his credit reports, his purported claims under Sections 1681e(b) (Count I) and 1681i (Count X) of the FCRA and Sections 380-j(e) (Count II) and 380-k (Count XI) of the NYFCRA fail.  *See Khan*, 2019 WL 2492762, at *4 (collecting cases).

### B.  Reporting Obsolete Information (Counts III and IV)

Plaintiff again claims that Defendant reported obsolete information, in violation of Section 1681c(a)(4) of the FCRA and Section 380-j(f)(1)(iv).  (SAC 18–21.)  With respect to the FCRA claim, Plaintiff alleges that:

> Defendant reported the 3 disbursements with open dates ranging from 2001-2003 because these loans dates [sic] of first delinquency actually occurred as early as 2004 and as late as 2009.  Therefore, these loans should have "aged off" or been purged from its reports as early as 2011 and as late as 2016.

(SAC 18.)  Plaintiff further alleges that "the loans originating between the years of 2001–2003 . . . had been delinquent well before June of 2012."  (SAC 11.)  He claims that "delinquencies occurred on these particular loans in, 2003, 2004, 2005, and . . . up [until] 2010."  (SAC 12.)

With respect to his NYFCRA claim, Plaintiff alleges that "around July of 2017 he paid off all of the loans at issue and thus triggered the protections of the NYFCRA."  (SAC 19.)  He also

alleges that "the loans originating between 2001-2003 were first placed for collection in 2004" and that "that the loans originating in 2011 were placed collection [sic] in June of 2012."  (SAC 20.)

Section 1681c(a) of the FCRA provides that no consumer reporting agency may produce a consumer report containing "[a]ccounts placed for collection or charged to profit and loss which antedate the report by more than seven years."  15 U.S.C. § 1681c(a)(4).  The seven-year period

> shall begin, with respect to any delinquent account that is placed for collection . . . , charged to profit and loss, or subjected to any similar action, upon the expiration of the 180-day period beginning on the date of the commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action.

*Id.* § 1681c(c)(1).  Generally, "[t]he seven year period begins to run 180 days from the date of the first delinquency on an account."  *Mierek v. Bank of Am. Corp.*, No. 7:07–400–HMH–BHH, 2008 WL 746981, at *6 n.4 (D.S.C. Mar. 18, 2008).   But where a delinquency on an account is resolved—for example, the account is made current or placed in forbearance—then the account later becomes delinquent a second time and is then referred to collection, the seven-year reporting window accrues with the second, later delinquency.  *See Beseke v. Equifax Info. Servs., LLC*, 420 F. Supp. 3d 885, 898 (D. Minn. 2019) (noting that "where a consumer brings his or her delinquent account current and defaults again, a [consumer reporting agency] should use the new default date as the date to determine when to purge the entire account").

Section 380-j(f)(1)(iv) of the NYFCRA provides that no consumer reporting agency may produce a consumer report containing "accounts placed for collection or charged to profit and loss which antedate the report by more than seven years; or accounts placed for collection or charged to profit and loss, which have been paid and which antedate the report by more than five years."  N.Y. Gen. Bus. Law § 380-j(f)(1)(iv).  The NYFCRA differs from the FCRA in that "the time

period begins running when the account was placed for collection or charged to profit and loss." (Opinion & Order 8.) *Wimberly*, 2019 WL 6895751, at *4.

Judge Failla previously ruled that Plaintiff failed to show that Defendant reported his accounts beyond the FCRA and NYFCRA statutory periods. (Opinion & Order 8–10.) *Wimberly*, 2019 WL 6895751, at *4. Nothing in the Proposed Second Amended Complaint alters that conclusion. Plaintiff alleges that "the loans throughout their history were intermittently deferred or put into forbearance by the Department of Education" (SAC 11) and when his enrollment at NYU ended in December 2011 or January 2012, the loans entered an automatic deferment until June 2012 (SAC 20 (noting that the loans "thereafter were [p]laced for collection in June of 2012")). Plaintiff contends that the standard for the date of first delinquency is not impacted by deferments or forbearances (SAC 11) and, therefore, making an account current "does not create a new date of first delinquency" (Pl.'s Br. 11).

Contrary to Plaintiff's allegations—which are *not* factual allegations but erroneous conclusions of law—the FCRA's seven-year reporting period began anew in June 2012 with Plaintiff's defaulting on his payments after the deferment period ended. *See Beseke*, 420 F. Supp. 3d at 898; *see also Hasan v. Navient Sols., Inc.*, No. 14-14196-LTS, 2016 WL 6832682, at *4 (D. Mass. Mar. 11, 2016) (holding that the seven-year period began with plaintiff's failure to make payments after the deferment period ended as a result of the plaintiff not attending school full-time). The seven-year period therefore closed in or about December 2019—more than three years after Plaintiff began disputing the loans and more than one year after Plaintiff commenced this action. (Opinion & Order 10.) *Wimberly*, 2019 WL 6895751, at *4. Plaintiff offers no support for his argument that "June 2012 is not the date of first delinquency for all of the accounts at issue in this case." (SAC 20.) Accordingly, Plaintiff cannot maintain a claim under Section 1681c(a)(4)

of the FCRA (Count III).  *Cf. Rosenberg v. Equifax Info. Servs., LLC*, No. 3:19-cv-00042-FLW-ZNQ, 2020 WL 4253063, at *2 (D.N.J. July 16, 2020) (granting summary judgment where report was issued within seven-year period of plaintiff's account becoming delinquent).

As Judge Failla previously found, Plaintiff also has not stated a claim under Section 380-j(f)(1)(iv) of the NYFCRA.  His allegations regarding when his loans were placed for collection are directly contradicted by documentary evidence and therefore need not be credited.  (*See* Opinion & Order 9–10.) *Wimberly*, 2019 WL 6895751, at *4.  Plaintiff's allegation in the Proposed Second Amended Complaint that the loans originating between 2001 and 2003 were placed for collection in 2004 (SAC 20) is inconsistent with his allegations that "the first day he missed a payment . . . was likely in 2004 or 2005" (SAC 15) and that "the loans from 2001-2003[] had been consolidated in 2004 or 2005 [and] the new loan in 2004 or 2005 paid off the 3 of the previous loan disbursements at issue in this case from 2001-2003" (SAC 17).  It is also inconsistent with and contradicted by the documentary evidence.  For instance, the 2007 Equifax Report that Plaintiff filed in support of the Motion to Further Amend shows that Equifax, Experian, and TransUnion reported his loans originating in 2001 as delinquent and not in collections.  (*See* Equifax, 3-in-1 Credit Report as of August 15, 2017 (filed under seal).)  In addition, the National Student Loan Data System ("NSLDS") printouts filed by Plaintiff at the motion to dismiss stage show that the loans originating between 2001 and 2003 were not placed for collection in 2004, were in repayment or forbearance between 2003 and 2012, and were not declared in default until 2013.  (Mot. Seal Ex. 2, at 5–6, 8–9, 11–12 [ECF No. 44-2].)[3]  Moreover, Plaintiff's allegation

---

[3] The Court may consider the NSLDS reports because it is apparent that Plaintiff relied on these documents in preparing the Proposed Second Amended Complaint. *See Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir. 2000) (noting that courts may consider "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit" (citing *Cortec Indus.*, 949 F.2d at 47–48)). Indeed, Plaintiff references the NSLDS printouts in his brief in support of the Motion to Further Amend. (*See* Pl.'s Br. 9, 12, 24.)

that the loans originating in 2011 were placed for collection in June 2012 (SAC 20) is contracted by the NSLDS printouts, which show that these loans were in forbearance in April 2012, in repayment until May 2012, and declared in default in July 2013 (Mot. Seal Ex. 2, at 23–24, 26–27).

Where, as here, "document[s] relied on in the complaint contradict[] allegations in the complaint, the document[s], not the allegations, control, and the court need not accept the allegations in the complaint as true." *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592–93 (S.D.N.Y. 2013) (quoting *Poindexter v. EMI Record Grp. Inc.*, No. 11 Civ. 559(LTS), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012)); *see L-7 Designs*, 647 F.3d at 422. The Court thus declines to credit Plaintiff's allegations that his loans were placed for collection in 2004 and 2011, rendering the reported information obsolete within the meaning of Section 380-j(f)(1)(iv) of the NYFCRA. As Judge Failla recognized, the earliest any of the disputed accounts entered collection was in January 2014 and therefore "the earliest of these loans would not have expired until January 2019, almost three years after Plaintiff began disputing these loans and five months after Plaintiff brought this action." (Opinion & Order 10.) *Wimberly*, 2019 WL 6895751, at *4. Accordingly, Plaintiff fails to state a claim under Section 380-j(f)(1)(iv) of the NYFCRA (Count IV).

## III.   Plaintiff's Newly Proposed Causes of Action Each Fail To State a Claim

### A.   Failure To Notify Plaintiff of Reinsertion of Previously Deleted Material (Count VII)

Plaintiff's Proposed Second Amended Complaint alleges that Defendant failed to notify him of the reinsertion of previously deleted material into his "disclosures" in violation of Section 1681i(a)(5)(B)(ii) of the FCRA. (SAC 26–27.) Plaintiff alleges that "in 2005 or 2006 the Defendant reinserted the 3 loan disbursements originating between 2001 or 2002 into the Plaintiff's disclosures." (SAC 26.) More specifically, Plaintiff alleges that "each time that

information reappeared on a report, after having previously been deleted he should have been notified." (SAC 26.)

Section 1681i(a)(5)(A) of the FCRA requires that a consumer reporting agency delete information disputed by a consumer from the consumer's file if that information cannot be verified pursuant to a "reinvestigation under paragraph (1)." 15 U.S.C. § 1681i(a)(5)(A)(i); *see id.* § 1681i(a)(1). Section 1681i(a)(5)(B) provides, "If any information is deleted from a consumer's file pursuant to subparagraph (A), the information may not be reinserted in the file by the consumer reporting agency unless the person who furnishes the information certifies that the information is complete and accurate." *Id.* § 1681i(a)(5)(B)(i). And if a consumer reporting agency reinserts any previously deleted information, it must "notify the consumer of the reinsertion in writing not later than 5 business days after the reinsertion." *Id.* § 1681i(a)(5)(B)(ii); *see Phipps v. Experian*, No. 20-CV-3368 (LLS), 2020 WL 3268488, at *2 (S.D.N.Y. June 15, 2020) (describing FCRA reinsertion procedure). Accordingly, to state a valid claim for failure to notify under Section 1681i(a)(5)(B), "the re-reported information must have been deleted pursuant to a § 1681i(a)(1) reinvestigation." *Miller v. Wells Fargo & Co.*, No. 3:05-CV-42-S, 2008 WL 793683, at *6 (W.D. Ky. Mar. 24, 2008); *see also Smith v. Specialized Loan Servicing, LLC*, No. 1:17-CV-02940-LMM-RGV, 2017 WL 8222347, at *4 (N.D. Ga. Nov. 28, 2017) (noting that "15 U.S.C. § 1681i(a)(5)(B)(ii) is limited to situations where a consumer reporting agency . . . removes information from a consumer's credit file after reinvestigation under 15 U.S.C. § 1681i(a)(1)").

Plaintiff's proposed reinsertion claim fails for two reasons. First, Plaintiff does not allege that the reinserted loan disbursements were deleted pursuant to a reinvestigation. Indeed, Plaintiff does not even allege that he disputed the loan disbursements to prompt a reinvestigation. To the contrary, Plaintiff alleges that the loans from 2001 to 2003 were deleted in 2004 or 2005 after they

16

were consolidated but then reappeared on his credit report sometime between 2007 and 2010. (SAC 17.)[4]  Because the loan disbursements were not deleted from Plaintiff's file pursuant to a reinvestigation, any alleged reinsertion did not trigger the notice requirement.  Therefore, Defendant cannot be liable for failure to notify.  *See Miller*, 2008 WL 793683, at *6 (holding that defendant could not be liable under Section 1681i(a)(5)(B) because the reinserted information was not deleted pursuant to a reinvestigation).

Second, even if the alleged reinsertion did trigger the notice requirement, Plaintiff's claim would be time-barred.  Claims under the FCRA must be filed either "2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability" or "5 years after the date on which the violation that is the basis for such liability occurs."  15 U.S.C. § 1681p.  Plaintiff argues that although the loan disbursements were reinserted between 2005 and 2006, the reinsertion claim is timely because "each time that information reappeared on a report, after having previously been deleted [Plaintiff] should have been notified."  (SAC 26–27.)  This interpretation is inconsistent with the text of the statute.  By its plain terms, Section 1681i(a)(5)(B)(ii) mandates that a consumer reporting agency provide notice when previously deleted information is reinserted in the consumer's credit *file*, not the consumer's credit *report*.  *See* 15 U.S.C. § 1681i(a)(5)(B)(ii). *Cf. Hammer v. Equifax Info. Servs., L.L.C.*, 974 F.3d 564, 569 (5th Cir. 2020) (finding that notice under Section 1681i(a)(5)(B)(ii) is not required when a consumer reporting agency reinserts previously deleted information into a consumer's credit *report*, as opposed to a consumer's credit

---

[4] Plaintiff vaguely states in his brief that he "believes he has disputed these loans and they were previously removed prior to late 2010." (Pl.'s Br. 17.) As Judge Failla recognized, "courts are permitted to consider allegations presented by *pro se* litigants for the first time in their opposition papers, as long as such allegations are consistent with the complaint." (Opinion and Order 2 n.1.) *Wimberly*, 2019 WL 6895751, at *1 n.1. The Court does not consider this allegation because it is inconsistent with the allegation in the Proposed Second Amended Complaint that the loans were deleted after they were consolidated. (SAC 17.) Even if the Court were to consider it, the Court could not reasonably infer that such disputes prompted a reinvestigation because the allegation is so lacking in factual content. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

*file*).  Accordingly, even if the alleged reinsertion of the loan disbursements in 2005 or 2006 triggered the notice requirement, any claim for failure to notify would be time-barred.  As such, Plaintiff fails to state a claim under Section 1681i(a)(5)(B)(ii) of the FCRA (Count VII).

### B.  Failure Timely To Notify Furnishers of a Dispute (Count VIII)

Plaintiff proposes to bring a claim under Section1681i(a)(2)(A) of the FCRA for failure to notify furnishers of his disputes.  (SAC 27.)  Plaintiff alleges that "Defendant failed to notify the relevant furnishers within 5 business days from the time it received the disputes."  (SAC 27.)

Section 1681i(a)(2)(A) of the FCRA provides:

> Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller . . . , the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person.  The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.

15 U.S.C. § 1681i(a)(2)(A).

The Proposed Second Amended Complaint is devoid of any factual details that would enable the Court to draw the reasonable inference that Defendant is liable for violating this statute. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  Plaintiff simply provides a "formulaic recitation of the elements of [the] cause of action," which is insufficient to state a claim.  *Id.* Accordingly, Plaintiff's claim under Section1681i(a)(2)(A) of the FCRA (Count VIII) fails.

### C.  Failure To Advise on the Availability of Disclosure of Files (Count IX)

Plaintiff alleges that "[a]t all relevant times Defendant failed to promptly advise the Plaintiff of it's [sic] obligation to provide disclosure of the files in person, by mail or by telephone to Plaintiff."  (SAC 27.)  He alleges that this failure violates Section 380-d of the NYFCRA.  (SAC 27.)

Section 380-d outlines items a consumer reporting agency must clearly and accurately disclose to any consumer upon request and proper identification.  *See* N.Y. Gen. Bus. Law § 380-d(a).  The statute provides further that:

> every consumer reporting agency, upon contact by a consumer by phone, mail or in person regarding information which may be contained in the agency's files which has been or may be used for the purpose of providing a consumer report regarding that consumer, shall promptly advise the consumer of the obligation of the agency to provide disclosure of the files in person, by mail or by telephone pursuant to this section . . . .  The disclosure shall be provided in the manner selected by the consumer.

*Id.* § 380-d(c).

Plaintiff's claim that Defendant failed to advise him of Defendant's disclosure obligations is insufficient to state a claim.  Plaintiff provides no factual detail regarding Defendant's purported failure to advise Plaintiff of Defendant's obligation under Section 380-d(c), specifically when Plaintiff contacted Defendant, by what means, and for what purpose.  The plain language of the statute says that Defendant's obligation is triggered "upon contact by a consumer" and "regarding information which may be contained in the agency's files which has been or may be used for the purpose of providing a consumer report."  N.Y. Gen. Bus. Law § 380-d(c).  The Proposed Second Amended Complaint contains no specific factual allegations describing particular instances when Plaintiff contacted Defendant about information contained in Defendant's files and no specific allegations that Defendant failed to fulfill its obligation.  Plaintiff's general claim that Defendant failed to fulfill its obligations "[a]t all relevant times" is too conclusory to state a claim.  *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146 (2d Cir. 2011) (noting that courts "need not 'credit a complaint's conclusory statements without reference to its factual context'" (quoting *Iqbal*, 556 U.S. 686)).

While the specifics of the proposed claim are far from clear, the Court rejects Defendant's attempt to characterize Plaintiff's claim as a violation of Sections 380-d(a) and 380-e(b).  (Def.'s Opp. 18.)  This newly proposed cause of action in Count IX does not allege a failure to disclose Plaintiff's credit file; it alleges that Defendant failed to advise Plaintiff of Defendant's obligation to disclose the file if the consumer so requests.  (SAC 27.)  *See* N.Y. Gen. Bus. Law § 380-d(c).

Plaintiff's claim is, however, also deficient with respect to damages, as Defendant argues. (Def.'s Opp. 18.)  The NYFCRA provides only for actual (and punitive) damages in the event of a consumer reporting agency's noncompliance.  *See* N.Y. Gen. Bus. Law §§ 380-l, 380-m; *Ritchie v. N. Leasing Sys., Inc.*, No. 12-cv-4992 (KBF), 2016 WL 1241531, at *9 (S.D.N.Y. Mar. 28, 2016). Plaintiff fails entirely to allege any actual damages caused by Defendant's alleged failure to advise him of Defendant's purported disclosure obligations, even if the Court could infer from Plaintiff's allegations that those obligations were triggered.  In fact, Plaintiff does not allege that he was unaware of his right to obtain files from Defendant or that he refrained from seeking disclosure because Defendant failed to advise him that he could do so.  *See Menton v. Experian Corp.*, No. 02 Civ. 4687(NRB), 2003 WL 941388, at *3 (S.D.N.Y. Mar. 6, 2003) (dismissing claim under N.Y. Gen. Bus. Law § 380-d because the plaintiff suffered no actual damages from the delay in receiving his credit report); *see also Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474–75 (2d Cir. 1995) (affirming grant of summary judgment where plaintiff failed to show causation between the harm alleged and defendants' alleged FCRA violations).  Accordingly, Plaintiff's proposed claim under Section 380-d (Count IX) fails.

### D. "Mental Anguish and Suffering," or Intentional Infliction of Emotional Distress (Count XII)

Plaintiff proposes to assert a claim for "mental anguish and suffering" (SAC 29–30), which the Court construes as a claim for intentional infliction of emotional distress. Plaintiff alleges that Defendant's reporting cost him housing opportunities, which led to his hospitalization. (SAC 10.)

To state a claim for intentional infliction of emotional distress under New York law, a plaintiff must satisfy four elements: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993)). To qualify as extreme and outrageous, "[t]he conduct alleged must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Coggins v. County of Nassau*, 254 F. Supp. 3d 500, 523 (E.D.N.Y. 2017) (quoting *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985)).

Here, the alleged conduct is hardly extreme or outrageous and certainly does not rise to the level necessary to state a claim for intentional infliction of emotional distress. *See Cohen v. Equifax Info. Servs., LLC*, No. 18-CV-6210 (JSR) (KHP), 2019 WL 2451293, at *2 (S.D.N.Y. Apr. 17, 2019) (noting that courts have dismissed claims for intentional infliction of emotional distress where plaintiffs alleged conduct was worse than inaccurate reporting of credit information (citations omitted)); *Ogbon*, 2013 WL 1430467, at *11 (dismissing intentional infliction of emotional distress claim in part because "defendants acted reasonably in compiling credit information that they received from reliable Furnishers"); *Evans v. Credit Bureau*, 904 F. Supp. 123, 127 (W.D.N.Y. 1995) (finding that the "fail[ure] to correct the alleged inaccuracies in

21

[plaintiff's] credit report . . . does not constitute 'extreme and outrageous conduct' which would support the claim for intentional infliction of emotional distress").   Accordingly, Plaintiff's proposed claim for intentional infliction of emotional distress fails as a matter of law.

### CONCLUSION

Based on the foregoing, the Court DENIES Plaintiff's Motion for Leave to File a Second Amended Complaint.  Since each proposed count fails to state a claim upon which relief can be granted, the proposed amendments would be futile.  Accordingly, IT IS HEREBY ORDERED that the case is DISMISSED with prejudice.

The Clerk of Court is respectfully requested to terminate docket entry 79 and close the case.

**SO ORDERED.**

**Date:  February 1, 2021**
      **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**